# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| KYLE MARK HANE, | |
| Plaintiff, | No. C25-53-LTS-KEM |
| vs. | |
| CITY OF CEDAR RAPIDS, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## I. INTRODUCTION

This matter is before me on several motions. First are motions (Docs. 32, 33, 35, 36) to dismiss filed by all named defendants.[1] Plaintiff Kyle Mark Hane then filed a motion (Doc. 42) to amend his amended complaint (Docs. 21, 42-1). Defendants filed resistances (Docs. 43, 44, 45, 46) to that motion (Doc. 42). Hane then filed a motion (Doc. 50) to withdraw his prior motion (Doc. 42) to amend and to substitute a new motion for leave to file a second amended complaint (Doc. 50-1). Defendants filed resistances (53, 54, 55) to that motion (Doc. 50). Finally, Hane filed a reply (Doc. 56) to those resistances. I find that oral argument is not necessary. *See* LR 7(c).

---

[1] The named defendants are: the City of Cedar Rapids, Iowa; City of Cedar Rapids Police Officer Cassandra Gundacker; City of Cedar Rapids Police Officer Alexander Karl-Beu Haas; City of Cedar Rapids Chief of Police David Dostal (collectively, Cedar Rapids Defendants); City of Marion, Iowa; City of Marion Police Officer Johanna Heidelbauer; City of Marion Police Officer Benoit Leroy (collectively, Marion Defendants); Linn County, Iowa; Linn County Sheriff Brian D Gardner (collectively, Linn County Defendants); State of Iowa Attorney General Brenna Bird; State of Iowa Deputy Attorney General Shean Fletchall; State of Iowa Director of Transportation Scott Marler; and the State of Iowa, by and through the Iowa Attorney General (collectively, State Defendants). All defendants are sued in their individual and official capacities.

## II. BACKGROUND

Hane filed his pro se complaint (Doc. 1) on April 24, 2025. Because he paid the filing fee, a review under 28 U.S.C. § 1915(e)(2) was not conducted. On May 15, 2025, Hane filed an amended complaint (Doc. 21). On May 29, 2025, motions to dismiss were filed by Linn County Defendants (Doc. 32), State Defendants (Doc. 33), Marion Defendants (Doc. 35) and Cedar Rapids Defendants (Doc. 36).

On June 25, 2025, Hane filed a motion (Doc. 42) to amend the amended complaint (Doc. 21). On July 9, 2025, resistances to that motion were filed by Linn County Defendants (Doc. 44), State Defendants (Doc. 43), Marion Defendants (Doc. 45) and Cedar Rapids Defendants (Doc. 46). On July 18, 2025, Hane filed a motion (Doc. 50) for leave to file second amended complaint (Doc. 50-1) that would replace the previous motion (Doc. 42) to amend.[2] On July 31, 2025, Linn County Defendants filed a resistance (Doc. 53) to the motion (Doc. 50). On August 1, 2025, State Defendants and Cedar Rapids Defendants filed resistances (Docs. 54, 55). On August 4, 2025, Hane filed a reply (Doc. 56).

As Hane's claims in the various complaints shift, I will summarize the claims made in his amended complaint (Doc. 21). He "claims violations of the right to intrastate travel, due process, access to meaningful judicial redress, and the unconstitutional conversion of rights into privileges." Doc. 21 at 3-4. Hane's claims primarily arise from two traffic stops, the first on December 11, 2024, and the second on January 19, 2025, as well as "automated traffic camera enforcement" in the City of Cedar Rapids. *Id.* at 7-20. No further detail is given about the particulars of the stops, other than they originated out of "Iowa code 321," presumably related to a lack of motor vehicle

---

[2] Hane's motion (Doc. 42) to amend and motion (Doc. 50) for leave to file second amended complaint both include attachments labeled "Second Amended Complaint," which are not identical. Any references to the Second Amended Complaint herein are to the version filed with the most recent motion (Doc. 50) unless otherwise noted.

2

registration and/or possessing a valid driver's license. Hane cites a Linn County District Court case, but nothing explicit links that case to any of the events outlined in the complaint. *Id.* Hane makes four claims against the defendants:

(1) "Violation of protected Right of Intrastate Travel" and that "[e]ach Defendant, by act, omission, or callous indifference, contributed to a conspiracy and deprivation of [that right] . . ." (Claim One).

(2) That Hane's Due Process rights were violated as "[p]rior to and during trial in Linn County Case #STA0384738, Defendants Fletchall and Bird had a clear opportunity and responsibility to act . . ." and failed to do so (Claim Two).

(3) "The City of Cedar Rapids, City of Marion, and Linn County Sheriff's office maintain a policy and custom of treating all roadway use as a privilege" (Claim Three).

(4) "Iowa Code §814.6, as applied, violates Article I, Section 11 of the Iowa Constitution, which guarantees the right of appeal in all non-felony criminal cases" (Claim Four).

*Id.* at 7, 18, 20, 22.³

---

³ While Hane's claims in his proposed second amended (Doc. 50-1) are more cogent, they are substantially similar as his amended complaint that will be discussed below. For the sake of comparison, the second amended complaint alleges: (1) Defendants collectively interfered with his constitutional right of intrastate travel by unlawfully enforcing state and municipal statutes relating to motor vehicle licensing and registration; (2) Bird deprived him of "rights through supervisor liability, failure to intervene to prevent harm, callous disregard, and involvement in conspiracy to deprive Plaintiff of his federally protected rights;" (3) Fletchall "directly participat[ed] in the conspiracy to deprive Plaintiff of his federally protected rights;" (4) Marler deprived him of "rights through supervisor liability, failure to intervene to prevent harm, callous disregard, and involvement in conspiracy to deprive Plaintiff of his federally protected rights;" (5) Gardner failed to "discharge his statutory and constitutional duties as Linn County Sheriff;" (6) Dostal failed to train, supervise, or intervene to prevent violations of Hane's constitutional rights by officers under their command;" (7) Heidelbauer, Leroy, Gundacker and Haas enforced Iowa's licensing and registration statutes without lawful authority; and (8) Linn County, City of Cedar Rapids and City of Marion knowingly maintained and enforced policies that infringed upon his right to travel on public roadways. Doc. 50-1 at 21-42.

## III.   RELEVENT LEGAL STANDARDS

### A.   Rule 15 Standards

Courts must liberally construe pro se complaints.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).  Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim.  *Stone*, 364 F.3d at 914.  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead.  The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so.  When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

4

## B. Section 1983 Standards

Title 42, United States Code, Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979,

986 (8th Cir. 2006). To impose § 1983 liability on a local government body, a plaintiff must show that an official policy, custom or widespread practice caused a deprivation of a constitutional right. *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 690-91 (1978). Even if a plaintiff is not privy to the facts necessary to describe with specificity the alleged municipal custom, the complaint must allege facts that would support the existence of a municipal custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *see also Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (stating official capacity suits involve either allegedly unconstitutional policies or actions taken by governmental agent who possesses final authority over a particular decision).

## C. Rule 12(b)(1) Standards

Rule 12(b)(1) permits a party to seek dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The federal courts are courts of limited jurisdiction that "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proving subject matter jurisdiction is on the plaintiff. *V S Ltd. Partnership v. Dept. of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). Moreover, a federal court has a special obligation to consider *sua sponte* whether it has subject matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). If a plaintiff lacks standing to pursue a claim, then the court has no subject matter jurisdiction. *Brooks v. City of Des Moines, Iowa*, 844 F.3d 978, 979 (8th Cir. 2016). "Therefore, a standing argument implicates Rule 12(b)(1)." *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002).

6

When determining standing, the emphasis is on whether the plaintiff "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). Generally, a plaintiff must assert his or her own legal rights and cannot assert the legal rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Id.* at 560–61 (internal citations and quotations omitted); *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). The requirement of standing "ensures that [judges] act as judges, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) (emphasis omitted). "The standing inquiry is both plaintiff-specific and claim-specific. Thus, a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." *Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

7

Similarly, "[t]he issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction." *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota,* 362 F.3d 512, 520 (8th Cir.2004). The court must consider it, even if parties do not raise it. *Id.* Such a challenge is properly entertained on a Rule 12(b)(1) motion. *Johnson v. United States,* 534 F.3d 958, 964 (8th Cir. 2008).

Finally, if a claim is barred by sovereign immunity, then the court has no subject matter jurisdiction. *See Estate of Henry through Barrett v. Schwab*, No. 6:18-CV-2090, 2019 WL 4888575, at *2 (N.D. Iowa Oct. 3, 2019) ("Questions of sovereign immunity fall squarely within the province of a 12(b)(1) motion because, if immunity is present for a claim, the Court lacks subject matter jurisdiction over that claim.") (citing *Mumford v. Godfried*, 52 F.3d 756, 758 (8th Cir. 1995)).

Where a party limits its subject matter jurisdiction attack to the face of the complaint, the attack is a "facial challenge." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013). When presented with a facial challenge, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quotations omitted)). Those protections include treating the complainant's factual allegations as true and dismissing the action only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 n.6.

By contrast, when a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n.6) (quotations omitted). Where the challenge is factual, "the district court is entitled

8

to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

Here, the attack is facial, not factual, as the Iowa Defendants argue that Hane's allegations do not meet the legal requirements to establish standing. Doc. 33-1 at 14. As such, I will consider only the parties' pleadings.

### D. *Rule 12(b)(6) Standards*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

9

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In deciding a motion brought under Rule 12(b)(6), the court may consider certain materials outside the pleadings, including (a) "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and (b) "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting

10

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Thus, the court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller*, 688 F.3d at 931 n.3 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

While factual allegations made in the pleadings by the non-moving party are to be taken as true for the purposes of a 12(b)(6) motion, "legal conclusions couched as factual allegations are afforded no such protections." *Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019) (citing *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017)).

### E.  *Sovereign Immunity and Qualified Immunity Standards*

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has stated:

> "[A] State can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it. The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction. The immunity is one the States enjoy save where there has been a surrender of this immunity in the plan of the convention. The Court's recognition of sovereign immunity has not been limited to the suits described in the text of the Eleventh Amendment. To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying, we have extended a State's protection from suit to suits brought by the State's own citizens. Furthermore, the dignity and respect afforded a State, which the

11

>immunity is designed to protect, are placed in jeopardy whether or not the suit is based on diversity jurisdiction."

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) (internal quotations and citations omitted). Eleventh Amendment immunity applies to § 1983 claims against states and state entities because, in enacting the original version of § 1983, Congress did not intend to abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Eleventh Amendment immunity is not absolute, but rather there are:

> [I]mportant exceptions to state immunity from suit have been recognized which allow citizens to vindicate rights infringed on by the state. If a state official is named as a defendant instead of the state or one of its agencies, the Eleventh Amendment status of the suit is less straightforward. Although the Eleventh Amendment bars suits seeking to impose a liability which must be paid from public funds in the state treasury, . . . courts may order injunctions to prevent or remedy a state officer's conduct. . . . Courts may also award a wide range of prospective relief which serves to bring an end to a present violation of federal law . . . even though accompanied by a substantial ancillary effect on the state treasury.

*Larson v. Kempker*, 414 F.3d 936, 939–40 (8th Cir. 2005) (internal quotations and citations omitted).

Government officials are "entitled to qualified immunity, shielding [them] from liability unless:" (1) that official violated a federal statutory or constitutional right, and (2) that constitutional right was clearly established such that a reasonable government official would have known of the right at the time of the alleged violation. *Klum v. City of Davenport*, No. 24-2165, 2025 WL 2167879, at *3 (8th Cir. July 31, 2025) (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019)). The court may analyze either prong first, if either prong is not satisfied then the officer is entitled to qualified immunity. *Id.* For the second prong, a "clearly established" right requires the law to "have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what [they were] doing violated that right." *Klum*, No.

12

24-2165 at *3 (quoting *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020)); *see also Johnson v. Schurman*, No. 24-2002, 2025 WL 2112860, at *3 (8th Cir. July 29, 2025) ("Government officials are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.").

Put simply, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Joseph v. Wheeler*, No. 24-1672, 2025 WL 2056150, at *1 (8th Cir. July 23, 2025).

### IV. DISCUSSION

I will consider defendants' motions to dismiss and Hane's motion for leave to file a second amended complaint simultaneously to evaluate (1) whether defendants have stated grounds for dismissal (2) whether those grounds could be cured by Hane's proposed second amended complaint. For reasons set out below, I find that defendants motions to dismiss must be granted and allowing any further amendment would be futile.

#### A. *Motions to Dismiss*

Three of the four claims in Hane's complaint rest on his claim that he "possesses an absolute right to intrastate travel, as repeatedly affirmed by both the Iowa Supreme Court and the Federal Circuit Courts." Doc. 21 at 6. This shifts somewhat in the proposed amended complaint (Doc. 50-1), in which all eight claims are grounded in a "well-established natural common law right to drive on the Iowa highways [which] is guaranteed and protected under both State and Federal constitutions and laws." Doc. 50-1 at 5-6. Hane asserts that either this "right to drive his automobile on the highways of Iowa in the ordinary and customary fashion," or the "absolute right to intrastate travel,"

13

precludes him from having to comply with relevant laws pertaining to licensing and vehicle registration. Docs. 21 at 6, 50-1 at 41.

These sovereign citizen type claims are utter nonsense. As another federal district court has explained:

> The premise of Plaintiff's Complaint is that the Nebraska statute requiring an operator's license in order to drive a vehicle does not apply to him—commonly known as a "sovereign citizen" claim based on the idea that statutes and laws do not apply him as a sovereign citizen. Sovereign-citizen claims have repeatedly been rejected as frivolous. *See United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (referring to the sovereign-citizen argument as "completely without merit, patently frivolous and … rejected without expending any more of this Court's resources"); *United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983) (rejecting "sovereign citizen" as a status); *Hansen v. Nebraska*, No. 8:20CV203, 2020 WL 3100101, at *2 (D. Neb. June 11, 2020) (premise of plaintiff's claims that he is not subject to state law or authority has been repeatedly rejected as frivolous; collecting cases); *Meyer v. Pfeifle*, No. 4:18-CV-04048, 2019 WL 1209776, at *5 (D.S.D. Mar. 14, 2019), aff'd, 790 F. App'x 843 (8th Cir. 2020) "[the plaintiff's] allegations regarding rights as a 'sovereign citizen' are frivolous and fail to state a claim"); *Yisrael-Bey v. O'Toole*, No. 4:17-CV-2631, 2018 WL 10425462, at *1 (E.D. Mo. Feb. 5, 2018) (plaintiff's Fourth Amendment false arrest and false imprisonment claims were frivolous when plaintiff claimed that neither state nor federal government had ability to bring criminal charges against her; "Arguments based on the 'sovereign citizen' or 'private citizen' movement cannot establish subject matter jurisdiction in this action under the Fourth Amendment.").

*King v. Turnbull*, No. 4:21CV3003, 2021 WL 1293307, at *2 (D. Neb. Apr. 7, 2021). Moreover, Hane's allegations are legal conclusions couched as factual allegations that need not be taken as true. *See, e.g., Lewis*, 932 F.3d at 649. His assertion of an absolute constitutional right to travel is false, as are the assertions that such a right would entirely foreclose on the state's regulatory ability. *See, e.g., Kansas v. Glover*, 589 U.S. 376, 381 (2020) (reaffirming that states have a "vital interest" in the regulation of motor

vehicle operation) (citing *Delaware v. Prouse*, 440 U.S. 648, 658 (1979)). As such, I find that Hane has failed to state a plausible claim regarding the enforcement of motor vehicle regulations in the State of Iowa and he has failed to allege that any action by any defendant violated a right secured by the Constitution or laws of the United States.

In Claim Four, Hane asserts that Iowa's motor vehicle code violates the Iowa Constitution. "Generally speaking, § 1983 supplies the remedy for vindication of rights arising from federal statutes." *Does v. Gillespie*, 867 F.3d 1034, 1039 (8th Cir. 2017) (citing *Thiboutot*, 448 U.S. at 4–8); *see also Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2227 (2025) (emphasizing even "federal statutes do not confer 'rights' enforceable under § 1983 'as a matter of course'") (quoting *Health and Hospital Corporation of Marion Cty. v. Talevski*, 599 U.S. 166, 183 (2023)). However, "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Colbert v. Roling*, 233 F. App'x 587, 589 (8th Cir. 2007) (quoting *Collins v. Bellinghausen,* 153 F.3d 591, 596 (8th Cir.1998)); *see also Smith v. Reynolds*, 139 F.4th 631, 637 n.5 (8th Cir. 2025) ("[a] plaintiff may not bring a state claim under the aegis of § 1983") (quoting *Preston v. Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011)). Because § 1983 provides a remedy for violations of federal law, and Claim Four alleges no violation of federal law, it fails to state a claim upon which relief may be granted.

Defendants raise numerous other issues in their motions (Docs. 32, 33, 35 and 36) to dismiss. For example, the State Defendants argue that Hane's claims against them should be dismissed because a state, or any state employee sued in his or her official capacity, is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). (Doc. 33-1 at 14-15). In *Will*, the Court stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a

15

> remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66.[4] There is no indication that the State of Iowa has waived its immunity or that its immunity has been overridden by Congress. In fact, the State Defendants expressly assert this immunity. Doc. 33-1 at 15. Hane's § 1983 claims against the State of Iowa, as well as those against Bird, Fletchall and Marler in their official capacities, are barred by the Eleventh Amendment.

The claims against other defendants are similarly barred. To bring a claim under §1983 against a local government body, Hane must show that an official policy, custom or widespread practice caused a deprivation of a constitutional right. *Monell*, 436 U.S. at 690-91. Because there have been no deprivations of Hane's constitutional rights, any claims against the Marion Defendants, the Cedar Rapids Defendants and the Linn County Defendants, either directly or through employees sued in their official capacities, must be dismissed.

In addition, the government-official defendants are entitled to qualified immunity. To successfully assert qualified immunity at the motion to dismiss stage, government officials must show that they are entitled to such on the face of the complaint. *Elder v. Gillespie*, 54 F.4th 1055, 1063–64 (8th Cir. 2022) (citing *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). Provided that a government official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

[4] The United States Supreme Court has also explained that states and state officials in their official capacities are not "persons" within the meaning of § 1983, such that they may not be properly named as defendants even setting aside their immunity under the Eleventh Amendment. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

16

person would have known," qualified immunity shields them from liability for civil damages. *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Hane fails to satisfy either prong of the qualified immunity test. As discussed above, the federal statutory or constitutional rights that Hane claims have been violated do not exist. Thus, Hane has not satisfied the first prong. He also fails to satisfy the second prong. The "rights," as Hane asserts them, were not clearly established at the time of the various claims. "For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Id.* (quoting *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020)). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality." *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018).

Given the level of legal gymnastics necessary to even attempt to assert the rights Hane describes, those rights certainly could not have been established to such an extent that it was sufficiently clear such that reasonable officials would have been on notice. Similarly, nothing in Hane's proposed complaint (Doc. 50-1) suggests that any of the officers' conduct in enforcing the relevant laws was objectively unreasonable, let alone that the officers themselves knew, or should have known, that their conduct was unlawful. As such, Heidelbauer, Leroy, Gundacker and Haas are entitled to qualified immunity.[5]

This same deficiency extends to the claims[6] against Bird, Fletchall, Marler, Gardner and Dostal. There is, again, nothing to suggest that any of the conduct of these officials was even questionable, let alone that it transgressed any bright lines that they

---

[5] In the amended complaint, Hane failed to even make allegations against Heidelbauer, Leroy or Gundacker beyond listing them as defendants, and only provides a singular mention of Haas while making no allegation. Doc. 21 at 6, 16.

[6] Claims One and Two, as well as Claims One through Six in the proposed complaint. Docs. 21, 50-1.

17

would have known, or should have known, about at the time the conduct occurred. *See Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005). Therefore, Bird, Fletchall, Marler, Gardner and Dostal are also entitled to qualified immunity.

In addition, any claims stemming from or related to on-going state action is likely barred by either *Younger* abstention or the *Rooker-Feldman* doctrine. "Under current *Younger v. Harris* doctrine, federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012) (internal citations omitted). Accordingly, *Younger* abstention prevents prospective, injunctive relief against state actors carrying out court ordered decisions. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 411 (E.D. Pa. 2013) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

"The *Rooker–Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 283–84 (2005). Unless the state court decision related has been invalidated, the federal court cannot act as 'super' appeals court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). *See also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995); *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). The Eighth Circuit noted that "[a]n important consideration for a court confronted with the issue of whether *Rooker-Feldman* applies is to analyze 'the effect the requested federal relief would have on the state court judgment.' *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir.

18

2004)." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816 (8th Cir. 2019).

Although it is difficult to discern which of Hane's state court cases are linked to which defendant, at least some of the cases remain pending in the Iowa state court system.[7] To the extent that Hane's requested injunctive relief would either relate to ongoing state cases or invalidate state court judgments, those would be prohibited under either *Younger* or the *Rooker-Feldman* doctrine.[8]

B.     *Proposed Amended Complaint*

The court has the discretion to deny leave to amend "where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted)). Determining the futility of an amended complaint is a question of law made by the court. *Mohamud v. Weyker*, No. 24-1875, 2025 WL 2056147, at *2 (8th Cir. July 23, 2025) (citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)).

Hane's proposed amended complaint would be his second amendment. Defendants contend that despite this "third bite at the apple," Hane has failed to cure the deficiencies of his previous complaints and allowing this latest complaint would be futile and prejudice the defendants. *See, e.g.,* Doc. 45 at 3, 54. I agree that permitting the proposed amendment would be futile. For the reasons discussed herein, all claims in Hane's

---

[7] In Hane's proposed complaint (Doc. 50-1) "Fact 11," Hane lists two cases, "# STA0387299 and STA0387300" and states that there are pending actions in various Iowa courts. Doc. 50-1 at 19-20. Linn County Defendants also point out that at least two of Hane's cases at issue, STA0384738 and STA0387300, are pending in Iowa State Courts. Doc. 32-1 at 8-9.

[8] Because this is merely an alternative holding, I need not dismiss Hane's case without prejudice.

19

Case 1:25-cv-00053-LTS-KEM    Document 58    Filed 09/09/25    Page 19 of 20

proposed amended complaint (Doc. 50-1) would fail on multiple grounds. Allowing further amendment would serve only to prejudice the defendants and waste judicial resources. Therefore, I will deny Hane's motion (Doc. 50) for leave to file his proposed amended complaint (Doc. 50-1).

## V. CONCLUSION

For the reasons set forth herein:

1. The Cedar Rapids Defendants' motion (Doc. 36) to dismiss is **granted**.
2. The Marion Defendants' motion (Doc. 35) to dismiss is **granted**.
3. The Linn County Defendants' motion (Doc. 32) to dismiss is **granted**.
4. The State Defendants' motion (Doc. 33) to dismiss is **granted**.
5. To the extent the motion at Doc. 50 is a motion to withdraw Hane's previously motion (Doc. 42) to amend, his motion is **granted**. The Clerk's office is directed to term Doc. 42.
6. To the extent Hane's motion at Doc. 50 is a motion to amend his complaint, that motion is **denied.**
7. Because this order disposes of all claims against all defendants, this case is **dismissed with prejudice**.

**IT IS SO ORDERED** this 9th day of September, 2025.

_____
Leonard T. Strand
United States District Judge